# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Joseph Anthony Roberson, Sr., | Case No. 16-cv-2578 (ADM/HB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| State of Minnesota; County of Hennepin; City of Minneapolis; Minneapolis Third Precinct Police Department; Minneapolis Police Officer Gregory Jeddeloh, in his individual and official capacities; Hennepin County Prosecuting Attorney's Office; Hennepin County Assistant Prosecuting Attorney Sarah Stennes, in her individual and official capacities; Honorable Judge Phillip H. Bush of Hennepin County District Court, in his individual and official capacities; Honorable Judge Regina M. Chu of Hennepin County District Court, in her individual and official capacities; Thant Pearson, Area Manager for the DEED Work Force Center/Vocational Rehabilitation Services, in his individual and official capacities; Barbara Schuler, Senior File Manager for the Work Force Center Vocational Rehabilitation Services, in her individual and official capacities; Work Force Center Vocational Rehabilitation Services, in its individual and official capacities; Jennifer (Case Manager to Team 160 of Hennepin County Economic Assistance Program and Appellants/Clients File # 1113065), in her individual and official capacities; Hennepin County Economic Assistance Program, in its individual and official capacities, Kelsie Dolney, CIP/ISR Agent for the Minnesota Department of Corrections, in her individual | |

|  |  |
|---|---|
| and official capacities; The Minnesota Department of Corrections, in its individual and official capacities; Deborah Shadegg, Hearing and Release Unit Officer for the Minnesota Department of Corrections, in her individual and official capacities; Jeffrey Peterson, Executive Officer for the Hearing and Release Unit of the Minnesota Department of Corrections, in his individual and official capacities; Jackie Busch, Minnesota Correctional Facility-Faribault, in her individual and official capacities; Tom Roy, Commissioner for the Minnesota Department of Corrections, in his individual and official capacities,<br><br>                Defendants. |  |

Joseph Anthony Roberson, Sr., 639 Providence Drive, Box 7, Shakopee, MN 55379, pro se

Kathryn I. Landrum, Minnesota Attorney General's Office, Suite 1100, 445 Minnesota Street, St. Paul, MN 55101, for State of Minnesota, Honorable Philip Bush, Honorable Regina Chu, Work Force Center Vocational Rehabilitation Services, Thant Pearson, Barbara Schuler, Minnesota Department of Corrections, Kelsie Dolney, Jackie Busch, and Tom Roy

James W. Keeler, Jr., and Paul R. Hannah, Hennepin County Attorney's Office, 300 South 6th Street, Suite A-2000, Minneapolis, MN 55487, for Hennepin County, Hennepin County Prosecuting Attorney's Office, Sarah Stennes, Jennifer (Case Manager), and Hennepin County Economic Assistance Program

Andrea Kloehn Naef, Minneapolis City Attorney's Office, 350 South 5th Street, Room 210, Minneapolis, MN 55415, for City of Minneapolis, Gregory Jeddeloh, and Minneapolis Third Precinct Police Department

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on a Motion to Dismiss filed by the State of

Minnesota, Honorable Philip Bush, Honorable Regina Chu, Work Force Center

Vocational Rehabilitation Services, Thant Pearson, Barbara Schuler, Minnesota Department of Corrections, Kelsie Dolney, Jackie Busch, and Tom Roy (collectively, "State Defendants") [Doc. No. 9]; a Motion to Dismiss filed by City of Minneapolis, Gregory Jeddeloh, and Minneapolis Third Precinct Police Department (collectively, "City Defendants") [Doc. No. 24]; and a Motion to Dismiss filed by Hennepin County, Hennepin County Prosecuting Attorney's Office, Sarah Stennes, Jennifer (Case Manager), and Hennepin County Economic Assistance Program (collectively, "County Defendants") [Doc. No. 32].[1]  The motions were referred to this Court for a report and recommendation by the Honorable Ann D. Montgomery in an Order of Reference dated August 16, 2016 [Doc. No. 7].

## I.    Introduction

Plaintiff Joseph Anthony Roberson, Sr. is proceeding pro se.  He brings claims against nineteen[2] Defendants under various statutes and rules, including the Americans with Disabilities Act (ADA), 42 U.S.C. § 12182(a); 42 U.S.C. § 1983; 42 U.S.C. § 1985(2) and (3); 42 U.S.C. § 1986; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; Minn. Stat. § 609.04, subd. 1; the Minnesota Human Rights Act (MHRA), Minn. Stat. § 363A.08; the Minnesota Code of Judicial Conduct Rules 1.2 and 2.11(a); Minnesota Rule of Professional Conduct 8.4(a)-(f); Minnesota Rule of Criminal Procedure 17.05; various policies of the DOC; the Fourth, Fifth, and Fourteenth

---

[1] Defendants Deborah Shadegg and Jeffrey Peterson did not file motions to dismiss.

[2] Plaintiff named the Minnesota Department of Corrections ("DOC") as a defendant three times in the caption of the complaint.

Amendments of the U.S. Constitution; and Article 1, § 7 of the Minnesota Constitution. (Compl. at 3-4.)  Plaintiff sues all individual Defendants in their personal and official capacities.

Plaintiff's complaint is organized into thirty-four counts.  His claims arise primarily from a criminal investigation and trial that took place in 2010, postconviction and habeas proceedings in 2010 through 2014, and his participation in post-release employment and education plans and an economic assistance program.  As relief, he requests $15,000,000 in damages.

## II.    State Defendants' Motion to Dismiss

Plaintiff's claims against the State Defendants arise from his state court criminal proceedings, post-release education and employment services provided by the Minnesota Department of Employment and Economic Development ("DEED"), and the revocation of his supervised release.  Plaintiff alleges the following "counts" against the State Defendants:

- Count 2: conspiracy and deprivation of civil rights against Judge Bush (and Officer Jeddeloh and Hennepin County prosecutor Sarah Stennes) for holding hearings in Plaintiff's state court criminal case (Compl. at 4-5);

- Count 3: conspiracy and deprivation of civil rights against Judge Bush (and Officer Jeddeloh and Stennes)for allowing new charges to be substituted in the state court criminal case (Compl. at 5-6);

- Counts 4 and 5: conspiracy and deprivation of civil rights against Judge Bush and Judge Chu (and Officer Jeddeloh and Stennes) for holding a jury trial in the state court criminal case (Compl. at 6-7);

- Count 6: conspiracy to deny direct appeals, petition for post-conviction relief, and federal habeas petition, against Judge Bush and Judge Chu (and Stennes), in

4

violation of Minn. Stat. § 609.04, subd. 1(1); Minnesota Code of Judicial Conduct Rules 1.2 and 2.11(a); Minnesota Rule of Professional Conduct 8.4(a)-(f); and Minnesota Rule of Criminal Procedure 1705 (Compl. at 7);

- Count 7: against Pearson and Schuler, conspiracy and deprivation of funding authorized in an "Employment/Education Plan" signed on July 3, 2012 (Compl. at 7-8);

- Counts 8 and 13: against Pearson and Schuler, conspiracy and deprivation of reimbursement for mileage and transportation costs to and from National American University (Compl. at 8, 9);

- Counts 9 and 14: against Pearson and Schuler, conspiracy and deprivation of financial aid to attend National American University (Compl. at 8, 10);

- Counts 10 and 15: against Pearson and Schuler, conspiracy and deprivation of automotive repairs so that Plaintiff could travel to and from school and job interviews (Compl. at 8-9, 10);

- Counts 11 and 16: against Pearson and Schuler, conspiracy to violate the "Privacy Act" by noting in Plaintiff's file that "if he becomes re-incarcerated we will close our file" (emphasis omitted) (Compl. at 9, 10);

- Count 12: against Pearson and Schuler, conspiracy to deprive Plaintiff of funding granted in the "Employment/Education Plan" (Compl. at 9);

- Count 17: against Pearson and Schuler (and two County Defendants), conspiracy to deprive Plaintiff of emergency assistance funding after agreeing he could relocate to a new residence (Compl. at 10-11);

- Count 18: against Pearson and Schuler (and two County Defendants), conspiracy to deprive Plaintiff of emergency assistance funding by refusing to transfer his case file to the Ramsey County Economic Assistance Program after Plaintiff moved to a new residence (Compl. at 11);

- Counts 19, 23, and 28: against Dolney, Shadegg, Peterson, Busch, and Roy, conspiracy to deprive Plaintiff of being "Restructured"[3] after he violated DOC policy only one time (Compl. at 11-12, 12-13, 14-15);

---

[3] If an individual violates a condition of supervised release, the DOC may (1) restructure the conditions and continue the release, (2) continue the release without modification, or (3) revoke the release.  Minn. R. 2940.2700, 2940.3700.

- Counts 20, 24, and 29: against Dolney, Shadegg, Peterson, Busch, and Roy, conspiracy to deprive Plaintiff of a maximum ninety-day penalty for a first time violation instead of being restructured (Compl. at 12, 13, 15);

- Counts 21, 25, and 30: against Dolney, Shadegg, Peterson, Busch, and Roy, disregarding Plaintiff's medical conditions, medications, and college attendance in deciding to return Plaintiff to prison (Compl. at 12, 13, 15);

- Counts 22, 26, and 31: against Dolney, Shadegg, Peterson, Busch, and Roy, conspiracy to return Plaintiff "to prison when there were no pending court/criminal charges against" him (Compl. at 12, 14, 15-16);

- Counts 27 and 32: against Shadegg, Dolney, Peterson, Busch, and Roy, conspiracy to deprive Plaintiff of a due process hearing regarding the application of sentencing guidelines concerning the revocation of supervised release, pursuant to DOC Policy #106 (Compl. at 14, 16);

- Count 33: against Busch, Dolney, Shadegg, and Roy, conspiracy to deprive Plaintiff of his Fourteenth Amendment due process rights by adding fifty-one days of incarceration to his term of imprisonment, based on a single violation (Compl. at 16-17); and

- Count 34: against Roy, Dolney, Shadegg, Peterson, and Busch, conspiracy to prevent the deprivation of Plaintiff's civil rights (Compl. at 17).

The State Defendants argue for dismissal of all claims against them on the grounds of lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6).

### A.     Standard of Review

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a complaint for lack of subject matter jurisdiction.  A party contesting subject matter jurisdiction may mount either a facial challenge or a factual challenge to a court's jurisdiction.  *See Osborn v. United States*, 918 F.2d 724, 729-30 & n.6 (8th Cir. 1990).

6

On a facial attack, the court limits its consideration to the allegations of the complaint. *Id.* at 729 & n.6.  On a factual attack, the court may consider matters outside the pleadings without converting the motion to one for summary judgment.  *Id.*  Here, the State Defendants mount a facial challenge to the Court's subject matter jurisdiction.

On a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court "must take the well-pleaded allegations of the complaint as true, and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader." *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A court has the duty to construe liberally a pro se party's pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Generally, a court may not consider matters outside the pleadings in assessing the sufficiency of a complaint under the Rule 12(b)(6) standard.  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted).  A court may make exceptions to this rule for matters of public record, materials "necessarily embraced by" the complaint, and exhibits submitted with the complaint.  *Id.* (citations omitted).

**B.     Section 1983, 1985, and 1986 Claims**

**1.     Eleventh Amendment Immunity**

Plaintiff has sued the individual State Defendants in their personal and official capacities.  He has also sued the State of Minnesota and the DOC directly.

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  "As such, it is no different from a suit against the State itself." *Id.*  Official-capacity suits are subject to the Eleventh Amendment, which generally bars § 1983 suits against a State unless immunity has been waived or overridden by Congress.  *Id.* at 66.  *Cf. Green v. Mansour*, 474 U.S. 64, 68 (1985) (recognizing exception for certain suits for prospective, injunctive relief) (citing *Ex Parte Young*, 209 U.S. 123 (1908)).  A State's immunity from suit under the Eleventh Amendment divests a court of subject matter jurisdiction.  *See United States v. Metro. St. Louis Sewer Dist.*, 578 F.3d 722, 724 (8th Cir. 2009).  An agency of a State, such as the DOC, is entitled to the same Eleventh Amendment immunity.  *Grant v. City of Blytheville, Ark.*, 841 F.3d 767, 772 n.3 (8th Cir. 2016).

Minnesota has not waived its Eleventh Amendment immunity for § 1983 claims. *Phillips v. Minn. State Univ. Mankato*, No. 09-cv-1659 (DSD/FLN), 2009 WL 5103233, at *3 (D. Minn. Dec. 17, 2009). Nor has Congress abrogated the States' immunity by enacting § 1983.  *Quern v. Jordan*, 440 U.S. 332, 345 (1979).  Plaintiff does not seek relief other than monetary damages for his § 1983 claims against the State Defendants. Thus, the Eleventh Amendment bars his § 1983 official-capacity claims against all State

8

Defendants. *See Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997). The same is true for the § 1985 and § 1986 claims. *Greene v. Gassman*, No. 11-618 (PJS/TNL), 2011 WL 7462043, at *3 (D. Minn. July 26, 2011) (§ 1985 claim), *R. & R. adopted*, 2012 WL 748374 (D. Minn. Mar. 6, 2012), *aff'd*, 489 F. App'x 997 (8th Cir. 2012); *Rodgers v. Univ. of Mo. Bd. of Curators*, 56 F. Supp. 3d 1037, 1050 (E.D. Mo. 2014) (§ 1986 claim), *aff'd as modified*, 634 F. App'x 598 (8th Cir. 2015), *cert. denied*, 137 S. Ct. 55 (Oct. 3, 2016). Consequently, the Court lacks subject matter jurisdiction over Plaintiff's official capacity §§ 1983, 1985, and 1986 claims against all State Defendants, and the claims should be dismissed with prejudice.

## 2.    Qualified Immunity

With respect to Plaintiff's personal capacity §§ 1983, 1985, and 1986 claims, the individual State Defendants argue they are entitled to qualified immunity.

"Qualified immunity shields a public official from suit for civil damages when his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Bernini v. City of St. Paul*, 665 F.3d 997, 1002 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Determining whether an official is entitled to qualified immunity requires a court to answer two questions: "(1) whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." *Peterson v. Kopp*, 754 F.3d 594, 598 (8th Cir. 2014) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)) (internal quotation marks omitted). A government official is entitled to qualified immunity unless "both of these

9

questions are answered affirmatively." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (quotation omitted).  The Court has discretion which prong "should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.  Thus, when a court concludes that a constitutional right was not violated, it need not address whether the right was clearly established at the time of the alleged violation. *Fields v. Abbott*, 652 F.3d 886, 894 (8th Cir. 2011).

Dismissal pursuant to Rule 12(b)(6) on the grounds of qualified immunity is appropriate "when the immunity is established on the face of the complaint.'" *Weaver v. Clarke*, 45 F.3d 1253, 1255 (8th Cir. 1995).  The plaintiff must allege a plausible violation of a constitutional right, and the constitutional right must have been clearly established at the time of the alleged violation.  *See id.*

Plaintiff alleges constitutional violations under the Fourth, Fifth, and Fourteenth Amendments.  The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend IV.  None of the conduct alleged against the State Defendants implicates a search or seizure, and Plaintiff clarifies in his opposition memorandum that his Fourth Amendment claim is asserted only against the County and City Defendants. Thus, because Plaintiff does not assert a clearly established constitutional right that he claims was violated by the State Defendants, those Defendants are entitled to qualified immunity to the extent the complaint could be construed to assert a Fourth Amendment claim against them.

Plaintiff also alleges the State Defendants violated his Fifth and Fourteenth Amendment rights by returning him to prison rather than "restructuring" him, depriving

him of a hearing, and imposing a longer term of imprisonment.  The Court interprets

these allegations as due process claims arising under the Fourteenth Amendment.[4]  The

State Defendants do not specifically address these allegations in the context of the

Fourteenth Amendment in their discussion of qualified immunity.  (*See* State Defs.'

Mem. Supp. Mot. Dismiss at 7-8 [Doc. No. 11]; Reply at 3-4 [Doc. No. 40].)  The Court

finds that the alleged conduct, liberally construed, states a plausible due process claim,

and that the alleged due process rights were clearly established at the time of the alleged

conduct.  *See Morrissey v. Brewer*, 408 U.S. 471, 487-89 (1972) (recognizing, in

revocation-of-parole case, due process rights of written notice, disclosure of adverse

evidence, the opportunity to be heard and present witnesses and evidence, the opportunity

to confront and examine witnesses, a neutral hearing officer, and a written statement of

the reasons for revocation).  Thus, the State Defendants have not established an

entitlement to qualified immunity at this stage of the case on Plaintiff's due process

claims arising from the revocation of his supervised release.

It is not clear from the complaint whether Plaintiff intended to bring due process

claims based on the alleged denial of funds under a post-release employment and

education plan, denial of reimbursement for mileage and transportation costs to and from

college, denial of financial aid, denial of payment for automotive repairs, denial of

relocation expenses, violation of the Privacy Act, and failure to transfer a case file from

---

[4] "The Fourteenth Amendment's due process clause provides that '[n]o State shall . . .
deprive any person of life, liberty, or property, without due process of law.'"  *Truong v.
Hassan*, 829 F.3d 627, 631 (8th Cir. 2016) (quoting U.S. Const. amend. XIV, § 1).  The
Due Process Clause of the Fifth Amendment, by contrast, applies to federal action.  *Id.* at
631 n.4.

one county to another.  The Court will construe the complaint liberally and presume he did so intend.  Unlike the claims arising from the revocation of Plaintiff's supervised release, however, this set of claims does not implicate a protected life, liberty, or property interest, nor does Plaintiff allege that the State Defendants deprived him of such an interest without adequate procedural safeguards.  *See Stevenson v. Blytheville Sch. Dist.#5*, 800 F.3d 955, 965-66 (8th Cir. 2015) (quotations omitted).  Thus, qualified immunity on these clams is appropriate.

Accordingly, consistent with the above, the Court recommends that all individual capacity claims against the State Defendants be dismissed on the basis of qualified immunity, with the exception of the claims relating to the revocation of Plaintiff's supervised release.  As set forth immediately below, however, the latter claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

### 3.    *Heck v. Humphrey*

The State Defendants argue that any §§ 1983, 1985, or 1986 claim based on events related to the revocation of Plaintiff's supervised release, including claims based on alleged violations of DOC policy, are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  The Supreme Court stated in *Heck*:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. . . .  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is

not cognizable under § 1983 . . . .  [T]he district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 486-87 (emphasis in *Heck*).  Under *Heck* and its progeny, a "§ 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief) . . .—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration."  *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis in *Wilkinson*).  *Heck*'s holding has been extended to cover claims under §§ 1985 and 1986.  *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1097 n.4 (9th Cir. 2004); *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999).

Here, Plaintiff has not successfully challenged the revocation of his supervised release, or the proceedings surrounding the revocation, on direct appeal, in a habeas proceeding, or through any other legal avenue.  Consequently, his §§ 1983, 1985, and 1986 claims arising from the revocation and related events, and seeking damages for those actions, are not cognizable here.  *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997).  If Plaintiff were to prevail on these claims in this Court, the result would necessarily imply the invalidity of the revocation, subsequent incarceration, and extension of the release date.  The claims are therefore barred by *Heck*.  *See Favors v. Hoover*, No. 13-cv-428 (JRT/LIB), 2016 WL 675708, at *9 (D. Minn. Jan. 29, 2016) ("[T]o the extent that Favors' claims . . . would necessarily require the invalidation of the revocation of his supervised release and his subsequent incarceration . . ., Favors' claims

13

are barred by *Heck*."), *R. &. R. adopted*, 2016 WL 659710 (D. Minn. Feb. 18, 2016),

*aff'd*, ---F. App'x----, No. 16-1888, 2016 WL 6595968 (8th Cir. Nov. 8, 2016); *see also*

*Rickmyer v. Browne*, No. 13-cv-559 (SRN/LIB), 2014 WL 1607590, at *8 (D. Minn. Apr.

18, 2014) ("[C]ourts have routinely applied the *Heck v. Humphrey* doctrine to parole

revocation proceedings."), *aff'd*, 587 F. App'x 354 (8th Cir. 2014); *Williams v.*

*Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) (applying *Heck* to revocation of parole).

Accordingly, all §§ 1983, 1985, and 1986 claims arising from the revocation of Plaintiff's

supervised release and related events, which includes Plaintiff's claims based on alleged

violations of DOC policy, should be dismissed.  The Court will recommend dismissal

without prejudice so that Plaintiff may later re-allege the claims if he is able to challenge

successfully the revocation of his supervised release on direct appeal or habeas review.

### 4.    Judicial Immunity

Judge Bush and Judge Chu argue they are entitled to judicial immunity on all

claims.  "Few doctrines were more solidly established at common law than the immunity

of judges from liability for damages for acts committed within their judicial jurisdiction."

*Pierson v. Ray*, 386 U.S. 547, 553-54 (1967) (citing *Bradley v. Fisher*, 13 Wall. 335

(1872)).  Judges are absolutely immune from civil lawsuits alleging misconduct during

the performance of their judicial functions, "even when the judge is accused of acting

maliciously and corruptly."  *Id.* at 554.  There are two exceptions to the judicial immunity

doctrine: (1) "a judge is not immune from liability for nonjudicial actions, i.e., actions not

taken in the judge's judicial capacity"; and (2) "a judge is not immune for actions, though

judicial in nature, taken in the complete absence of all jurisdiction."  *Mireles v. Waco*,

502 U.S. 9, 11-12 (1991).

Plaintiff alleges here that Judge Bush and Judge Chu violated his civil rights by holding hearings in a criminal matter, allowing criminal charges to be substituted, and presiding over a criminal jury trial.  He also alleges they conspired to deny his appeals, post-conviction petitions, and a federal habeas petition.  The Court finds that the specific judicial functions alleged by Plaintiff were performed in Judge Bush's and Judge Chu's judicial capacities, and the alleged actions fell squarely within their jurisdictional authority.  Consequently, all claims against Judge Bush and Judge Chu should be dismissed with prejudice.

### 5.    The Americans with Disabilities Act, 42 U.S.C. § 12182(a)

Plaintiff cited a provision of the ADA, 42 U.S.C. § 12182(a), at the beginning of his complaint.  This provision prohibits discrimination against individuals "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

Although Plaintiff referred to § 12182(a) in the first paragraph of his complaint, he did not allege any facts in support of this claim.  There are no allegations that he is disabled[5] or that any State Defendant denied him goods, services, facilities, privileges,

---

[5] In response to the State Defendants' motion, Plaintiff submitted materials from the Social Security Administration showing that the Appeals Council remanded for further proceedings a decision of an administrative law judge, but there is no finding of disability or description of the alleged disability.  (Pl.'s Index & Exs. at 21-26 [Doc. No. 20].)

advantages, or accommodations.  Merely naming a statute in a complaint does not adequately plead a claim.  *See Iqbal*, 556 U.S. at 678.

Plaintiff explained in his opposition memorandum that his ADA claim is founded on the State Defendants' alleged failure to assist him in transferring his file to the Ramsey County Economic Assistance Program from the Hennepin County Economic Assistance Program.  (Pl.'s Mem. Opp'n Mot. Dismiss at 25-26 [Doc. No. 19].)  This allegation does not state a claim for relief under § 12182(a).  Accordingly, the Court recommends that the ADA claim be dismissed.  The Court will recommend dismissal without prejudice because, while both the actual allegations in the complaint and the explanation provided in Plaintiff's memorandum are insufficient to state a plausible claim for relief, "this is not a circumstance in which the Court 'is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief,' such that dismissal without prejudice would be inappropriate." *See Bounds v. Hanneman*, No. 13-cv-266 (JRT/FLN), 2014 WL 1303715, at *14 (D. Minn. Mar. 31, 2014) (quoting *McLean v. United States*, 566 F.3d 391, 400 (4th Cir. 2009)).

### 6.    Section 504 of the Rehabilitation Act, 29 U.S.C. § 794

Similar to the ADA claim, Plaintiff did not allege any clearly identifiable facts in support of a claim against the State Defendants under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall . . . be excluded from the participation in, be denied the benefits of,

---

Thus, to the extent these materials could be construed as a request to amend the complaint, the Court finds that the addition of the allegations would be futile.

or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "To prevail on a claim under § 504, a plaintiff must demonstrate that: (1) he is a qualified individual with a disability; (2) he was denied the benefits of a program or activity of a public entity which receives federal funds[], and (3) he was discriminated against based on his disability." *Gorman v. Bartch*, 152 F.3d 907, 911 (8th Cir. 1998). Other than the federal funding requirement, the Rehabilitation Act and the ADA are similar and provide the same remedies, rights, and procedures. *Id.* at 912 (citations omitted).

According to Plaintiff's memorandum in opposition, his Rehabilitation Act claim is founded on the same facts as his ADA claim. (Pl.'s Mem. Opp'n Mot. Dismiss at 25-26.) As with the ADA claim, Plaintiff's allegations do not satisfy the requirements to state a claim for relief under the Rehabilitation Act. Accordingly, the Court recommends that the Rehabilitation Act claim be dismissed without prejudice.

### 7.      Minn. Stat. § 609.04, subd. 1

Plaintiff cites Minn. Stat. § 609.04, subd. 1, as a legal basis for several of his claims against the State Defendants. This statute is a criminal statute titled "Conviction of Lesser Offense." Not only does Plaintiff fail to allege how any State Defendant purportedly violated this statute, but "a criminal statute does not automatically give rise to a civil cause of action unless the statute expressly or by clear implication so provides." *Larson v. Dunn*, 460 N.W.2d 39, 47 n.4 (Minn. 1990). Section 609.04 does not so provide. This claim should be dismissed with prejudice.

### 8.     MHRA

Plaintiff refers to the MHRA, Minn. Stat. § 363A.08, one time in his complaint. He does not allege any particular facts in support of an MHRA claim, and his claim therefore fails to satisfy the *Iqbal* and *Twombly* pleading standards.

Furthermore, any MHRA claim based on the facts alleged would be time-barred. A civil claim brought pursuant to the MHRA must be filed within one year of the challenged conduct.  Minn. Stat. § 363A.28, subd. 3.  None of the State Defendants' actions described in the complaint occurred within the year before the complaint was filed.  The MHRA claim should be dismissed with prejudice.

### 9.     Claims Brought Pursuant to the Minnesota Code of Judicial Conduct, Minnesota Rules of Professional Conduct, and Minnesota Rules of Criminal Procedure

The Minnesota Code of Judicial Conduct, Minnesota Rules of Professional Conduct, and Minnesota Rules of Criminal Procedure do not create civil causes of action. *See* Minn. Code Jud. Conduct Scope (2013) ("The Code is not designed or intended as a basis for civil or criminal liability."); Minn. R. Prof'l Conduct Scope (2015) ("[The Rules] are not designed to be a basis for civil liability."); Minn. R. Crim. P. 1.01 ("These rules govern the procedure in prosecutions for felonies, gross misdemeanors, misdemeanors, and petty misdemeanors in the district courts in the State of Minnesota.") Consequently, any claim brought pursuant to these rules should be dismissed with prejudice.

### 10.     Article 1, Section 7 of the Minnesota Constitution

Plaintiff brings a claim under Article 1, § 7 of the Minnesota Constitution.  This

claim should be dismissed with prejudice because the Minnesota Supreme Court has not established a private right of action for damages for such a violation. *See Riehm v. Engelking*, 538 F.3d 952, 969 (8th Cir. 2008).

### 11.    State Defendants' Other Arguments for Dismissal

The State Defendants raised several other bases for dismissal, including the doctrine of official immunity, the *Rooker-Feldman* doctrine, failure to adequately plead a § 1986 conspiracy claim, and that the State of Minnesota is not a proper party.  Because the Court has concluded that Plaintiff's state law claims should be dismissed on other grounds, the Court does not address these arguments.

### 12.    Potential Breach of Contract Claim

In Plaintiff's memorandum in opposition and at the motion hearing, Plaintiff argued that his claims against Pearson and Schuler arising from the "Employment/ Education Plan" were breach of contract claims.  To the extent Plaintiff has alleged a viable breach of contract claim—and the Court is not concluding he has— supplemental jurisdiction should be declined.  This Court has recommended the dismissal of all of Plaintiff's federal claims against Pearson and Schuler, and as set forth below, the Court will ultimately recommend the dismissal of all federal claims asserted in this case.  There is no basis in the complaint for the Court's original jurisdiction over a breach of contract claim.  The Eighth Circuit has instructed courts to not exercise supplemental jurisdiction over state-law claims where, as recommended here, all federal claims are dismissed prior to trial.  *See Hervey v. Cty. of Koochiching*, 527 F.3d 711, 726-27 (8th Cir. 2008).  Any breach of contract claim, to the extent such a claim could be inferred from the complaint,

should therefore be dismissed without prejudice.

### 13.   State Defendants Deborah Shadegg and Jeffrey Peterson

Two State Defendants, Deborah Shadegg and Jeffrey Peterson, did not join in the

motion to dismiss.  The moving State Defendants represent in a footnote of their

memorandum that "Deborah Shadegg and Jeffrey Peterson are former employees of the

Minnesota Department of Corrections who it appears have not been properly served in

this case, and therefore, do not appear or join in this Motion to Dismiss."  (State Defs.'

Mem. Supp. Mot. Dismiss at 1 n.1 [Doc. No. 11].)  But the proof of service filed with the

Court on August 1, 2016, indicates that Peterson and Shadegg were personally served by

hand delivery at 1450 Energy Park Drive, Suite 200, St. Paul, MN 55108, on July 29,

2016.  (Proof of Service at 16 (Peterson), 22 (Shadegg) [Doc. No. 5].)  This is the same

date, location, and manner of delivery as service on other State Defendants, who did not

contest sufficiency of service.  (*E.g.*, Proof of Service at 4 (Schuler), 10 (Busch), 12

(Dolney), 18 (Pearson).)

The record before the Court does not indicate when Shadegg and Peterson ceased

their employment, and thus the Court is unable to determine whether they were employed

by the DOC on the August 1, 2016, date of service.  If Shadegg and Peterson wish to

challenge the sufficiency of process or service of process, they may file a motion

pursuant to Federal Rule of Civil Procedure 12(b)(4) or (5).  Meanwhile, consistent with

the Court's practice when a defendant fails to respond after being served with the

summons and complaint, the Court will, by separate order, require Plaintiff to:

1. Notify Shadegg and Peterson or their counsel immediately that they are required to answer or otherwise plead to the Complaint or submit a stipulation for an extension of time to answer or otherwise plead within ten days of service of the notice;

2. File the notice in CM/ECF; and

3. If no answer or other pleading is filed within ten days of service of the notice, file an application for entry of default or motion for default within twenty days of the date of the order.

## II.    City Defendants' Motion to Dismiss

Plaintiff's claims against the City Defendants arise from Officer Jeddeloh's alleged seizure and search of Plaintiff's cellular phone, "holding" criminal hearings, filing criminal charges, and "holding" a jury trial.  Plaintiff alleges the following "counts" against the City Defendants:

- Count 1: conspiracy and deprivation of civil rights against Officer Jeddeloh (and Hennepin County prosecutor Sarah Stennes) for the warrantless search and seizure of Plaintiff's cellular phone, which caused valuable pictures and documents to be lost (Compl. at 4);

- Count 2: conspiracy and deprivation of civil rights based on Plaintiff's race, against Officer Jeddeloh (and Judge Bush and Stennes), for holding hearings related to the search and seizure of Plaintiff's phone (Compl. at 4-5);

- Count 3: conspiracy and deprivation of civil rights based on Plaintiff's race, against Officer Jeddeloh (and Judge Bush and Stennes), for substituting without dismissal and refiling criminal charges (Compl. at 5);

- Count 4: conspiracy and deprivation of civil rights based on Plaintiff's race, against Officer Jeddeloh (and Judge Bush, Judge Chu, and Stennes), for holding a

criminal jury trial (Compl. at 6); and

- Count 5: conspiracy and deprivation of civil rights based on Plaintiff's race, against Officer Jeddeloh (and Judge Bush, Judge Chu, and Stennes), for holding a criminal jury trial at which Plaintiff was convicted of second and fifth degree felony possession of a controlled substance (Compl. at 6).

The City Defendants argue for dismissal of all claims against them on the grounds of lack of proper service of process pursuant to Rule 12(b)(5) and failure to state a claim under Rule 12(b)(6).

## A.      Service of Process

The City Defendants contend that Plaintiff has not properly served them with a copy of the summons and complaint.  Specifically, Officer Jeddeloh asserts he was not personally served in accordance with Federal Rule of Civil Procedure 4(e) or Minnesota law, and the City of Minneapolis asserts it was not served in accordance with Rule 4(j)(2) or Minnesota law.  Plaintiff asserts in his memorandum in opposition that he has properly served all defendants via mail and personally at their places of employment.  (Pl.'s Mem. Opp'n at 3 [Doc. No. 19].)

### 1.      Officer Jeddeloh

The Federal Rules of Civil Procedure require a summons to be served with a copy of the complaint.  Fed. R. Civ. P. 4(c)(1).  A defendant sued in his individual capacity may be served by:

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

22

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).  Minnesota state law provides for similar methods of service.  Minn. R. Civ. P. 4.03(a).

The proof of service filed by Plaintiff notes that service was accomplished by "hand delivery" on June 29, 2016, at the Third Precinct police station, 3000 Minnehaha Avenue, Minneapolis, MN.  (Proof of Service at 32 [Doc. No. 5].)  There is no signature or other indication of the individual who received the delivery.  Officer Jeddeloh avers he was not served by any method enumerated in Rule 4(e) or Rule 4.03(a).  (Jeddeloh Decl. ¶¶ 2, 4, 5, 7, 8 [Doc. No. 26].)  Nor was Officer Jeddeloh at the Third Precinct police station on July 29, 2016.  (*Id.* ¶ 4.)  Officer Matthew Nolan was working at the Third Precinct police station on July 29, 2016.  (Nolan Decl. ¶ 1 [Doc. No. 27].)  He observed a female walk into the lobby of the police station on July 29, 2016, drop a summons on the desk, announce she was serving Officer Jeddeloh, and leave.  (*Id.* ¶¶ 2-3.)  On these facts, the Court finds that Officer Jeddeloh has not been properly served in his individual capacity as required by Rule 4(e).

Federal Rule of Civil Procedure 4(m) requires dismissal without prejudice when a defendant is not timely served, but allows an extension of time for service "if the plaintiff shows good cause for the failure."  Fed. R. Civ. P. 4(m).  Plaintiff has not shown good

cause for his failure to properly serve Officer Jeddeloh, but he mistakenly believes that service of process was proper.  In this circumstance, the Court recommends that Plaintiff be granted an opportunity to effect proper service on Officer Jeddeloh during the objections period following the issuance of this Report and Recommendation.  If Plaintiff does not file proof of proper service on Officer Jeddeloh, and if any of his claims against Officer Jeddeloh are not dismissed with prejudice, the Court recommends that the claims be dismissed without prejudice pursuant to Rule 4(m).

### 2.    City of Minneapolis

A municipality "must be served by (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant."  Fed. R. Civ. P. 4(j)(2).  A municipality may be served under Minnesota law by delivery to either the Chief Executive Officer or the City Clerk.  Minn. R. Civ. P. 4.03(e)(2).

The proof of service filed by Plaintiff indicates that a process server personally served a copy of the summons and complaint on Minneapolis City Attorney Susan L. Segal on July 29, 2016, and that the City of Minneapolis was also served via priority mail.  (Proof of Service at 28 [Doc. No. 5].)  This attempted service does not appear to satisfy Rule 4(j)(2) or Rule 4.03(e)(2), because there is no evidence that Ms. Segal is the Chief Executive Officer or the City Clerk for the City of Minneapolis, or that Ms. Segal is authorized to accept service on the City's behalf.  Nor does service by mail constitute proper service, absent a valid acknowledgment of service returned by the defendant.  *See*

Fed. R. Civ. P. 4; Minn. R. Civ. P. 4.03, 4.05.  Therefore, the Court is unable to conclude that service on the City of Minneapolis was effective.  The Court recommends that Plaintiff be granted the same opportunity to effect proper service on the City of Minneapolis during the objections period.  If he does not file proof of proper service on the City of Minneapolis, and if any of his claims against the City of Minneapolis are not dismissed with prejudice, the Court recommends that his claims against the City of Minneapolis be dismissed without prejudice pursuant to Rule 4(m).

### B.   Fourth Amendment Claim

Plaintiff contends that Officer Jeddeloh violated the Fourth Amendment by seizing and searching his cellular phone without a warrant.  The City Defendants argue that, under the facts alleged in the complaint, the claim is time-barred.

When the allegations of a complaint demonstrate that a limitations period has expired, "a limitations defense may properly be asserted through a Rule 12(b)(6) motion to dismiss."  *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004).  Thus, the Court may properly consider the City Defendants' statute-of-limitations argument.  Once the Court concludes the claim is barred on the face of the complaint, "the burden shifts to the plaintiff to prove by a preponderance of the evidence that the statute of limitations was in fact tolled."  *Id.*

Plaintiff's Fourth Amendment claim is brought pursuant to § 1983.  The applicable state law statute of limitations governs § 1983 claims.  *Baker v. Chisom*, 501 F.3d 920, 922 (8th Cir. 2007).  The statute of limitations for § 1983 claims in Minnesota is six years.  *United States v. Bailey*, 700 F.3d 1149, 1153 (8th Cir. 2012).  As pleaded in

the complaint, the search and seizure at issue occurred on May 12, 2010, and Plaintiff

filed his complaint on July 29, 2016.  Thus, on the face of the complaint, the claim is

untimely.[6]

Plaintiff argued at the motion hearing that the statute of limitations was tolled

while he challenged his conviction through direct appeals and habeas petitions filed in the

state courts.  "Generally, a litigant seeking equitable tolling bears the burden of

establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that

some extraordinary circumstance stood in his way."  *Pace v. DiGuglielmo*, 544 U.S. 408,

418 (2005).  The Court finds that, although Plaintiff might have been pursuing his

criminal appeals and habeas rights diligently after his conviction, he has not diligently

pursued his right to bring his Fourth Amendment claim.  The final court action relating to

his criminal case was the denial of a petition for a writ of certiorari by the United States

Supreme Court on January 12, 2015.  *Roberson v. Minnesota*, 135 S. Ct. 977 (2015).

This was more than a year-and-a-half before he filed the present suit.  In addition,

Plaintiff has not identified any circumstance, extraordinary or otherwise, that prevented

him from filing suit within the six-year statute of limitations.  Accordingly, the statute of

limitations is not subject to equitable tolling, and Plaintiff's Fourth Amendment claim is

time-barred.

Alternatively, Officer Jeddeloh is entitled to qualified immunity on the Fourth

Amendment claim because the right at issue was not clearly established at the time the

---

[6] To the extent Plaintiff's allegation that the search and seizure of his phone caused the
loss of "valuable pictures and documents" could form the basis of a Fourth Amendment,
due process, or other claim, that claim is also untimely.

cell phone was seized.  According to Plaintiff, the right at issue was established in *Riley v. California*, 134 S. Ct. 2473, 2477 (2014).  There, the Supreme Court held that an officer generally must obtain a search warrant before searching a cell phone seized from a person incident to arrest.  *Id.* at 2484-85.  Before *Riley*, it was not clearly established that a warrantless search of a cell phone incident to arrest was unlawful.  *See Basham v. United States*, 811 F.3d 1026, 1028 (8th Cir. 2016) (noting that, before *Riley*, "there was no precedent from either the Eighth Circuit or the Supreme Court requiring a search warrant for the search of cell phone data incident to arrest").  Accordingly, when Plaintiff's cell phone was searched without a warrant in May 2010, it was not clearly established that a warrantless cell phone search violated the Fourth Amendment.  Because the facts alleged do not implicate a right that was clearly established at the time of Officer Jeddeloh's actions, *see Peterson*, 754 F.3d at 598, Officer Jeddeloh is entitled to qualified immunity.[7]

As to the City of Minneapolis, Plaintiff has alleged no facts directly against this defendant.  All of Plaintiff's allegations relate to Officer Jeddeloh.  When a plaintiff files an action against an officer in his official capacity, the action is one "against an entity of which an officer is an agent."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978).  In this case, that entity is the City of Minneapolis.

Governmental entities "are not vicariously liable under § 1983 for their employees' actions," but are "responsible only for 'their own illegal acts.'"  *Connick v.*

---

[7] Likewise, Plaintiff has not identified any clearly established Fourth Amendment or other right implicated by the loss of the pictures and documents on the phone.

*Thompson*, 563 U.S. 51, 60 (2011) (quotation and emphasis omitted).  Though a plaintiff need not "plead the specific existence of an unconstitutional policy or custom," a complaint must, at minimum, "allege facts which would support the existence of an unconstitutional policy or custom."  *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).  Plaintiff's complaint alleges no such facts.  Consequently, any Fourth Amendment claim or Fourth Amendment-based conspiracy claim against the City of Minneapolis should be dismissed with prejudice.

With respect to the Minneapolis Third Precinct Police Department, "the Minneapolis Police Department . . . is not a suable entity."  *El-Alamin v. Radke*, 369 F. App'x 770, 771 (8th Cir. 2010).  Thus, any Fourth Amendment claim or Fourth Amendment-based conspiracy claim against the Minneapolis Third Precinct Police Department should be dismissed with prejudice.

### C.     Claims Relating to Criminal Hearings and Trial

In Counts 2, 3, 4, and 5 of the complaint, Plaintiff alleges Officer Jeddeloh conspired to deprive and deprived him of his civil rights by holding criminal hearings, substituting without dismissal and refiling criminal charges, and holding a jury trial that resulted in his conviction.  These claims fail on at least two grounds and should be dismissed with prejudice.

First, the claims are barred by *Heck*.  Putting aside the implausibility that Officer Jeddeloh held hearings, convened a trial, filed criminal charges, or conspired to do any of these acts, Plaintiff's conviction resulting from these events has not been declared invalid.

Second, Officer Jeddeloh is entitled to qualified immunity on the claims.  The facts alleged by Plaintiff in Counts 2, 3, 4, and 5 do not make out a violation of a constitutional right, and Officer Jeddeloh's participation in the criminal proceedings did not violate any constitutional right.

With respect to the City of Minneapolis, Plaintiff has alleged no facts directly against the City in Counts 2, 3, 4, or 5, nor has he alleged facts that would support the existence of an unconstitutional policy or custom.  All claims against the City of Minneapolis should therefore be dismissed with prejudice.  Any remaining claims against the Minneapolis Third Precinct Police Department should also be dismissed with prejudice, because it is not a suable entity.

## III.   County Defendants' Motion to Dismiss

Plaintiff's claims against the County Defendants arise from two distinct sets of events: (1) the prosecution of his criminal case by Assistant Hennepin County Attorney Sarah Stennes and (2) the actions of Hennepin County Economic Assistance Program employee "Jennifer" concerning Plaintiff's "emergency assistance funding" after his relocation to a new address.  Plaintiff alleges the following "counts" against the County Defendants:

- Count 1: conspiracy and deprivation of civil rights against Stennes (and Officer Jeddeloh) for the warrantless search and seizure of Plaintiff's cellular phone, which caused valuable pictures and documents to be lost (Compl. at 4);

- Count 2: conspiracy and deprivation of civil rights based on Plaintiff's race, against Stennes (and Officer Jeddeloh and Judge Bush), for holding hearings related to the search and seizure of Plaintiff's phone (Compl. at 4-5);

29

- Count 3: conspiracy and deprivation of civil rights based on Plaintiff's race, against Stennes (and Officer Jeddeloh and Judge Bush) for substituting without dismissal and refiling criminal charges (Compl. at 5);

- Count 4: conspiracy and deprivation of civil rights based on Plaintiff's race, against Stennes (and Officer Jeddeloh, Judge Bush, and Judge Chu), for holding a criminal jury trial (Compl. at 6);

- Count 5: conspiracy and deprivation of civil rights based on Plaintiff's race, against Stennes (and Officer Jeddeloh, Judge Bush, and Judge Chu), for holding a criminal jury trial at which Plaintiff was convicted of second and fifth degree felony possession of a controlled substance (Compl. at 6);

- Count 6: conspiracy to deny direct appeals, petition for post-conviction relief, and federal habeas petition, against Stennes (and Judge Bush and Judge Chu), in violation of Minn. Stat. § 609.04, subd. 1(1); Minnesota Code of Judicial Conduct Rules 1.2 and 2.11(a); Minnesota Rule of Professional Conduct 8.4(a)-(f); and Minnesota Rule of Criminal Procedure 1705 (Compl. at 7);

- Count 17: conspiracy to deprive Plaintiff of emergency assistance funding, against Jennifer and the Hennepin County Economic Assistance Program (and two State Defendants), after agreeing he could relocate to a new residence (Compl. at 10-11); and

- Count 18: conspiracy to deprive Plaintiff of emergency assistance funding, against Jennifer and the Hennepin County Economic Assistance Program (and two State Defendants), by refusing to transfer his case file to the Ramsey County Economic Assistance Program after Plaintiff moved to a new residence (Compl. at 11).

The County Defendants move for dismissal of all claims against Stennes and Jennifer under Rule 12(b)(6).

### A.    Claims Against Stennes

A prosecutor has absolute immunity against a § 1983 suit for damages when she acts within the scope of her prosecutorial duties. *Imbler v. Pachtman*, 424 U.S. 409, 422-23, 427 (1976). Prosecutorial immunity applies to acts that are "intimately associated with the judicial phase of the criminal process," such as initiating a prosecution and

trying a case.  *Id.* at 430-31.  "If the prosecutor is acting as advocate for the state in a criminal prosecution, then the prosecutor is entitled to absolute immunity."  *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996).

Most of the acts attributed to Stennes in the complaint—holding hearings, dismissing and filing criminal charges, holding a trial, and responding to direct appeals and postconviction petitions for relief—are intimately associated with the judicial phase of the criminal process.  Stennes is entitled to prosecutorial immunity on these claims.

Stennes' alleged conspiracy with Officer Jeddeloh to seize and search Plaintiff's cellular phone, however, is potentially more investigatory in nature.  If her actions were a "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial," then absolute immunity applies.  *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).  But if her actions included planning and executing the search and seizure of the phone, she may only be entitled to qualified immunity.  *Id.* at 274.  The Court has already determined in Part II.B that Officer Jeddeloh is entitled to qualified immunity on this claim, and Stennes is entitled to qualified immunity for the same reasons.  Alternatively, the claim is time-barred, as set forth in Part II.B, and should be dismissed with prejudice.

Because Plaintiff's claims against Stennes are not only clearly foreclosed by absolute or qualified immunity, but also time-barred, the Court recommends that they be dismissed with prejudice and does not address Stennes' alternative grounds for dismissal.

**B.    Claims Against Jennifer and the Hennepin County Economic Assistance Program**

Plaintiff claims that Jennifer conspired with Thant and Pearson to deprive him of emergency assistance funding after agreeing he could relocate and by refusing to transfer his case file to Ramsey County after he moved.

With respect to Plaintiff's claims against Jennifer in her official capacity and the Hennepin County Economic Assistance Program, Plaintiff has not alleged a policy or custom of Hennepin County that would subject it to liability under § 1983 or §1985. Therefore, Plaintiff fails to state an official capacity claim against Jennifer or a direct claim against Hennepin County.  *See Monell*, 436 U.S. at 691 n.55; *Doe*, 340 F.3d at 614. As to Plaintiff's claim against Jennifer in her personal capacity, the Court has already determined that State Defendants Thant and Pearson are entitled to qualified immunity on Counts 17 and 18.  There is no reason this finding should not be extended to Jennifer. Therefore, the Court recommends that all claims against Jennifer and the Hennepin County Economic Assistance Program be dismissed with prejudice.  Because Plaintiff did not allege any state law claims against Jennifer or the Hennepin County Economic Assistance Program, the Court does not reach the question of whether official immunity applies.

Based on the above and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.  The Motion to Dismiss filed by the State of Minnesota, Honorable Philip

Bush, Honorable Regina Chu, Work Force Center Vocational

Rehabilitation Services, Thant Pearson, Barbara Schuler, Minnesota

Department of Corrections, Kelsie Dolney, Jackie Busch, and Tom Roy

[Doc. No. 9] should be **GRANTED**, and all claims against these

Defendants should be **DISMISSED WITH PREJUDICE** except the

ADA, Rehabilitation Act, MHRA, and breach of contract claims, which

should be **DISMISSED WITHOUT PREJUDICE**.

2.   The Motion to Dismiss filed by City of Minneapolis, Gregory Jeddeloh,

and Minneapolis Third Precinct Police Department [Doc. No. 24] should be

**GRANTED**, and all claims against these Defendants should be

**DISMISSED WITH PREJUDICE**.

3.   The Motion to Dismiss filed by Hennepin County, Hennepin County

Prosecuting Attorney's Office, Sarah Stennes, Jennifer (Case Manager),

and Hennepin County Economic Assistance Program [Doc. No. 32] should

be **GRANTED**, and all claims against these Defendants should be

**DISMISSED WITH PREJUDICE**.

4.   During the objections period following the issuance of this Report and

Recommendation, Plaintiff should be allowed to attempt to properly serve

Officer Jeddeloh and the City of Minneapolis.  If Plaintiff does not file

proof of proper service on Officer Jeddeloh or the City of Minneapolis, and

if any of his claims against Officer Jeddeloh or the City of Minneapolis are

not dismissed with prejudice, Plaintiff's claims against Officer Jeddeloh or

33

the City of Minneapolis should be dismissed without prejudice pursuant to

Rule 4(m).


Dated: December 19, 2016

*s/ Hildy Bowbeer*
HILDY BOWBEER
United States Magistrate Judge


### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.